---

(No. 11458.—Reversed and remanded.)
NELLE ANDERSON *et al.* Appellants, *vs.* NEWTON STEWART *et al.* Appellees.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

DEEDS—*deed will be reformed only when evidence of mutual mistake is certain.* To justify the reformation of a deed in equity the evidence must be strong and convincing that there was a mutual mistake by the parties in the respect alleged, and such remedy will not be granted upon a probability or mere preponderance of the evidence.

APPEAL from the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding.

WILBER H. HICKMAN, for appellants.

F. C. VANSELLAR, and FRANK T. O'HAIR, guardian *ad litem,* for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Nelle Anderson and Marsalene Fern Stewart, a minor, by her guardian, Nelle Anderson, filed their amended bill on January 30, 1917, in the circuit court of Edgar county, charging that Edgar Stewart died intestate seized in fee simple of the west half of the northwest quarter of section 18, town 14, north, range 12, west, and the east half of the northeast quarter of section 13, town 14, north, range 13, west of the second principal meridian, in said county; that he left surviving him Nelle Anderson, his widow, and Marsalene Fern Stewart and Edgar Vernon

Stewart as his only children and heirs-at-law, the latter be-
ing the son by a former wife of the deceased; that since
the death of Edgar Stewart, February 22, 1912, Newton
Stewart had been in possession of said premises and had
collected all the rents therefrom and had not accounted
for the same, and that the rental value thereof was $10 per
acre. The prayer of the bill was for partition and assign-
ment of dower and for an accounting for the rents and
profits. Newton Stewart, Edgar Vernon Stewart, Wilber
Hanna, Dell Wallace, Riley VanPelt and Nelle Lawson,
the latter four being tenants in possession of the premises,
were made parties defendant to the bill. Appellee Edgar
Vernon Stewart, by his guardian *ad litem,* answered, ad-
mitting the allegations of the bill *in toto.* Appellee Newton
Stewart, being mentally incompetent, answered by guardian
*ad litem,* denying that Edgar Stewart died seized of said
land and denying that his legal heirs had any interest there-
in; admitting the collection of the rents; averring that
Newton Stewart is the owner of the land, and admitting
that the heirs of Edgar Stewart are as set forth in the
amended bill. Newton Stewart also filed a cross-bill by
his said guardian *ad litem,* charging, in substance, that the
premises were transferred and conveyed to Edgar Stewart,
during his lifetime, through a mistake of the scrivener in
preparing the deed, it being the intention of Newton Stew-
art, at the time he made the deed, to only convey to Edgar
Stewart the other lands described in said deed. The widow
and heirs of Edgar Stewart were made parties defendant
to the cross-bill, with a prayer for the reformation of the
deed and cancellation of the same as a cloud upon his title
to the said lands described in the original amended bill.
Appellants, Nelle Anderson and Marsalene Fern Stewart,
and appellee Edgar Vernon Stewart, answered the cross-
bill, denying the allegations therein and averring that it
was the intention of the grantor, Newton Stewart, to con-
vey the lands described in the amended bill. Replications

were filed to all the answers, and afterwards the cross-bill
was amended so as to include the further allegation that
the execution of the deed of Newton Stewart to Edgar
Stewart, as aforesaid, as to said land was the result of
a mutual mistake of both grantor and grantee therein, etc.
Evidence was heard on the issues formed, and the court
found the several issues in favor of appellee Newton Stew-
art and against the appellants and Edgar Vernon Stewart.
The court by its decree dismissed the amended bill for want
of equity and reformed the deed of Newton Stewart in ac-
cordance with the prayer of the cross-bill by striking out
the description therein of the land described in the original
amended bill, and appellants have perfected their appeal to
this court.

The evidence in the record is not sufficiently clear, sat-
isfactory and convincing to sustain the decree of the court.
The undisputed facts in the record are that Newton Stew-
art is the father of Egbert, Albert, William, Walter and
Edgar Stewart, his sons, and of Florence Graham and May
Brown, his daughters; that the mother of said children,
Armina Stewart, and wife of Newton Stewart, in her life-
time was the owner in fee of lot 5 of the County Clerk's
subdivision of the southeast quarter of section 30 (frac-
tional) east of the boundary line, and of lot 1 of the County
Clerk's subdivision of the east half of the northeast quar-
ter of section 31 (fractional) east of the boundary line, in
township 13, north, range 11, west, which land is known
and referred to in this suit as "mother's land." Egbert
Stewart at the time of his death owned the west half of
the northwest quarter of section 18, township 14, north,
range 12, west, and the east half of the northeast quarter
of section 13, township 14, north, range 13, west of the
second principal meridian, in Edgar county, being the land
described in the amended bill and containing between 150
and 160 acres. Armina Stewart, the mother, died intestate
one day before Egbert died, and her seven children, includ-

ing Egbert, became owners in fee, as tenants in common, by descent, of the lands which she owned in her lifetime, subject to the dower rights of her husband, Newton Stewart. Shortly after her death Egbert died, leaving a will, by which he devised his land to his mother, brothers and sisters in the following language:

"*Second*—I will and bequeath to my mother, Armina Stewart, all of my property, both real and personal, to have and to use during her life, and at her death I want it all to go to my brothers and sisters in fee simple.

"*Third*—I desire that my personal property and the rents of the real estate shall be used in the payment of my debts, and that the real estate may be saved for my mother during her life and then go to my brothers and sisters as above set forth. The real estate is to be kept in a body and is not to be sold until all of my debts are paid."

The will nominated Edgar Stewart and Samuel Graham, brother-in-law of the testator, as executors. After the death of Egbert, his brother Edgar, on January 27, 1897, conveyed and warranted to his father, Newton Stewart, the following described real estate, to-wit: "All his undivided interest in lot No. five (5) of the County Clerk's subdivision of the southeast quarter of section thirty (30) fractional, east of the boundary line; also lot No. one (1) in the County Clerk's subdivision of the east half of the northeast quarter of section thirty-one (31) fractional, east of the boundary line; also the west half of the northwest quarter of section eighteen (18), in township fourteen (14), north, range twelve (12), west, and the east half of the northeast quarter of section thirteen (13), in township fourteen (14), north, range thirteen (13), west, situated in the county of Edgar, in the State of Illinois." Just after the release and waiver clause and just before the line containing the date in the deed is a clause containing this recital: "It is the intention of this deed to convey all the interest of the grantor to the said lands, subject, however,

to such indebtedness of grantor as has accrued against the estate of Egbert Stewart, deceased."

Egbert Stewart's estate was settled up after said deed to Newton Stewart was made and all debts were paid, but the estate was found to be insolvent, lacking $68.27, including the proceeds of the sale of the real estate, of equaling the amount of all the debts, as shown by the final report of Samuel Graham, executor. The executor presumably paid all of this excess. Edgar Stewart had previously resigned as executor, and the evidence discloses that he became insane some time before he died. Samuel Graham, as executor, on August 2, 1897, sold the land owned by Egbert in his lifetime and that is now in dispute, to pay the debts of the testator, and Newton Stewart became the purchaser and obtained an executor's deed therefor for the price of $8990.40.

On February 4, 1898, Newton Stewart made a deed to Edgar Stewart, his son, by which he conveyed and warranted the following described real estate, to-wit: "All his undivided interest in lot No. five (5) in the County Clerk's subdivision of the southeast quarter of section thirty (30) fractional, east of the boundary line; also lot No. one (1) in the County Clerk's subdivision of the east half of northeast quarter of section thirty-one (31) fractional, east of the boundary line, all in township 13, north, range 11, west; also the west half of the northwest quarter section eighteen (18), township fourteen (14), north, range twelve (12), west; also the east one-half of the northeast quarter section thirteen, township fourteen (14), north, range thirteen, west. It being the intention of the grantor to convey by this deed the land conveyed to him by Edgar Stewart in a deed made and dated January 27, 1897, situated in the county of Edgar, in the State of Illinois," etc. The recital of the interest intended to be conveyed in the latter deed follows the description of the land as above indicated, and this deed, and also the deed made by Edgar Stewart

to his father, are what are known as common statutory short-form warranty deeds. Nelle Anderson, one of the appellants herein, was married to one Anderson subsequent to the death of her husband, Edgar Stewart.

On behalf of appellee Newton Stewart, Samuel Graham, his son-in-law, testified that he remembers Edgar Stewart deeding his land to Newton Stewart in 1897; that he had a conversation with Edgar Stewart at his house, the substance of which was that Edgar said, "Papa was going to deed back to him his land that he got from his mother," or "Papa was going to deed back his land that he had deeded to him—his mother's land;" that said conversation was a week or two prior to the making of the deed to Edgar by his father; that he had a conversation with Newton Stewart and Edgar on the west side of the square, in Paris, on the way to Sellar's office; that Newton Stewart said, "I want to deed Edgar back his mother's land," and that in telling the scrivener what to write Newton Stewart said: "I want to convey back to him what he conveyed to me of his mother's land; that's the intention." He further testified that he did not remain until the deed was executed and heard no further conversation, and that Edgar did not say anything; that his father had a deed with him and showed the party who wrote the deed the old deed, presumably the deed Edgar made to his father; that after the deed was executed he heard Edgar say that he expected to get the "brick house," and that Edgar lived most of the time at the brick house. He did not remember when the deed was made by Newton Stewart except by the date of it, did not remember anybody that was present when they were at the office to make the deed, and did not know who of the office force at Sellar's office were present, if any of them were.

A number of witnesses testified that they paid rent on the land in question to Newton Stewart after the date of Newton Stewart's deed to Edgar, to-wit, Walter Stewart,

brother of Edgar, John Cash, and others, who testified that they had heard Edgar say that he had paid rent to his father on the land in question and that he expected to get the brick house. It is not made clear in this record what the witnesses mean by the "brick house," but they probably meant the land that the mother owned at her death. Other witnesses referred to it as the home place. William Stewart, brother of Edgar, testified that he spoke to Edgar about buying an interest in 40 acres of land, and that Edgar said to him: "I have nothing to pay for it with; I have nothing but personal property and am in debt, and would rather not buy the land and go in debt." Hiram Long testified that he worked for Edgar Stewart in 1907 and that Edgar told him that he didn't own the land, and that he didn't say anything about his father having made him a deed to it. Florence Graham testified that she is the daughter of Newton Stewart; that she heard her brother Edgar say that he and his father were going to town the next day and that his father was going to deed back to him his estate in "my mother's estate," and that he came to town the next day and told her that "they had made the deed." The evidence further shows by the testimony of appellees' witnesses that Newton Stewart paid all the taxes on the land after he made the deed to Edgar.

In support of their answer to the cross-bill appellants offered the testimony of May Brown, sister of Edgar Stewart, who testified that Edgar lived on the land in question and that she kept house for him; that their father visited them there many times, and he said that Edgar owned the farm but that he didn't want anything said about it; that Edgar was talking about the trouble they were having, and said Graham's wife was causing his wife so much trouble he would like to go on his own place, and that his father said to him, "It ain't policy for you to say anything about that yet;" that Edgar said he didn't know why, and that

his father replied, "There's lots of reasons; if they cause so much trouble now it would be a great deal worse;" that his father said he would rent the place, and that Graham's wife did not know that Edgar owned the land. She further testified that after she came to town to live on North Main street, in Paris, her father told her to keep still about Edgar owning the land,—that he didn't care to have the boys know that Edgar owned it; that on the day Edgar was buried her father said Edgar's children would "come in" without question; that he meant for them to have the land, but he didn't want a muss stirred up because of the other children; that he was getting too old to be bothered with the rest of them, and that when he was dead and gone the records would show that he had deeded it to Edgar Stewart. L. L. Snedeker testified that he talked to Newton Stewart about the drainage of the land in question and that Stewart said he was going to let Edgar have that land; that Edgar wanted to drain it west, and that he was perfectly willing to let him do that. Nelle Anderson testified that she was the wife of Edgar Stewart at the time of his death; that she went to Newton Stewart after Edgar's death and asked him for help for Edgar's children, and that he said he didn't have the money but the children would be provided for and get "his part of the land in question at his death," and that she told him she needed the money then. The evidence further shows that the deed to Edgar was recorded in said county on February 4, 1898, and that Edgar had the deed in his possession.

The rule has not only been announced but has been consistently adhered to in a long line of decisions in this State, that to justify the correction or reformation of a deed in equity the evidence must be of a very strong and convincing character that there was a mutual mistake by the parties in the respect alleged. (*Hunter* v. *Bilyeu,* 30 Ill. 228; *Shay* v. *Pettes,* 35 id. 360; *Stanley* v. *Marshall,* 206 id.

20; *Perry* v. *Elliott,* 261 id. 553.) In the case of *Lines* v. *Willey,* 253 Ill. 440, this court said that the rule that courts of .equity will reform a deed on account of a mistake, if proved by satisfactory evidence equivalent to an admission by both parties that a mistake was made, forbids such relief whenever the evidence is loose, equivocal or contradictory or is in its texture open to doubt or opposing presumptions. It was further said in that case: "The proof must be such as will strike all minds alike as being unquestionable and free from reasonable doubt." The remedy of reformation is not granted upon a probability nor upon a mere preponderance of the evidence but only upon a certainty of the evidence.

Tested by the above rules it is clear that the relief prayed for in the cross-bill must be denied. Nineteen years had elapsed from the time the deed was made to the time of the hearing in this case. Samuel Graham is the only witness for appellee Newton Stewart who testified as to any act or words of either the grantor or grantee near the time the deed was made, and his testimony was limited to statements made by the grantor. He admitted that he did not remain until the deed was executed. Conceding that all he testified to is the absolute truth, his evidence is not proof as to the final or last direction of the grantor to the scrivener. The grantor, in the signing of that deed, signed a plain, positive and unequivocal declaration inconsistent with the contention of his counsel and his guardian *ad litem.* The deed carries with it the positive presumption that after he had directed the description of the land that he desired to convey, he directed the scrivener to add in his deed, immediately after the description of the land, in substance, the statement that he intended by that deed to convey to Edgar Stewart the identical land that Edgar Stewart conveyed to him in the deed of January 27, 1897. This declaration is not simply a copy of a declaration in Edgar's deed to Newton Stewart, but was a new and out and out statement of

the grantor, Newton Stewart, at the making of the deed. This declaration of Newton Stewart, so far as this record discloses, is the last declaration he made before signing the deed,—the declaration that he made after the one testified to by Samuel Graham. This declaration in the deed is of itself sufficient to overcome all the testimony of the witnesses in support of the cross-bill, because it is a later declaration of the grantor or the last declaration made before his signing the deed, and he signed it as his declaration to signify his intent as to the land conveyed.

The decree of the circuit court must be reversed. The other evidence in the record, taken in connection with appellants' evidence, has no persuasive force in sustaining the decree, admitting the absolute truth of it.

Appellants, by their original amended bill, claimed that Edgar Stewart died seized of the entire title to the land in question, and that his children are each entitled to an undivided one-half in fee, subject to the dower interest of the widow, Nelle Anderson. There is no discussion in this case by counsel for either party, and not even a suggestion, that such a claim is or is not supported by the evidence in the record. Inasmuch as the trial court was not called upon and did not pass upon the question of the quantum of land conveyed by the deed of Newton Stewart to Edgar Stewart, we do not deem it proper for this court to finally determine that question on this appeal.

The decree is therefore reversed and the cause is remanded, with directions to the trial court to dismiss the cross-bill for want of equity, and for such further proceedings as to law and justice shall appertain.

*Reversed and remanded, with directions.*